EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

and

Allison Schieffelin, Plaintiff–Intervenor,

v.

MORGAN STANLEY & CO, INC, and
Morgan Stanley Dean Witter &
Co., Defendants.

Civil Action No. 01–CIV–8421 (RMB).

United States District Court,
S.D. New York.

July 12, 2004.

Elizabeth A. Grossman, Katherine E. Bissell, U.S. Equal Employment Opportunity Commission New York District Office, New York, NY, for Plaintiff.

Piper Hoffman, Scott A. Moss, Wayne Outten, Outten & Golden, LLP, New York, NY, for Plaintiff–Intervenor.

Andrew Johnstone, Andrew Johnstone, Brian Kavanaugh, Emily Nicklin, Gabor Balassa, Helen E. Witt, Thomas E. Dutton, Wendy L. Bloom, Kirkland & Ellis LLP, Chicago, IL, Joseph Serino, Jr., Kirkland & Ellis LLP, New York, NY, for Defendants.

### CONSENT DECREE

RICHARD M. BERMAN, District Judge.

This action was filed on September 10, 2001, by the Equal Employment Opportunity Commission ("EEOC"), an agency of the United States, alleging that Morgan Stanley & Co., Incorporated and Morgan Stanley Dean Witter & Co. (collectively "Morgan Stanley") violated Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, by engaging in a pattern or practice of discrimination against Allison Schieffelin ("Schieffelin"), a woman, and other women in Morgan Stanley's Institutional Equity Division world wide ("IED") at the levels of (i) Exempt Non–Officer eligible to be promoted to Vice–President (including but not limited to Associate and Professional); (ii) Vice–President; (iii)

Principal or Executive and (iv) Managing Director, by failing to fairly promote and compensate them and by discriminating against them in terms, conditions and privileges of employment. The Commission further alleged that Morgan Stanley retaliated against and terminated Schieffelin for asserting her rights under Title VII by complaining about sex discrimination (hereinafter "the EEOC Complaint"). On October 15, 2001, Schieffelin was granted leave to intervene as a plaintiff and filed her own Complaint, alleging violations of Title VII as well as state and local anti-discrimination laws (hereinafter "the Schieffelin Complaint"). Collectively EEOC, Morgan Stanley and Schieffelin are referred to as the "parties."

Morgan Stanley denies any wrongdoing or liability to EEOC or Schieffelin and contends that it has, at all times, treated its women employees and Schieffelin fairly and equitably in all terms, conditions and privileges of employment, including promotion and compensation.

The parties agree that it is in their mutual interest to fully resolve this matter without further litigation.

In consideration of the mutual promises of each party to this Consent Decree, the sufficiency of which is hereby acknowledged, it is agreed and ORDERED:

*Section 1: Jurisdiction*

1. The parties agree that this Court has jurisdiction over the subject matter of this action and over the parties, that venue is proper, and that all administrative prerequisites have been met.

2. No party shall contest the jurisdiction of this Court to enforce this Consent Decree.

*Section 2: Scope of the Consent Decree*

3. This Consent Decree resolves all issues raised by EEOC Charge Numbers 160–99–0423, 160–A0–2451 as amended, 160–2004–000974 and 160–A3–000865, and the EEOC Complaint, and constitutes a complete resolution of all claims raised in the EEOC Complaint. EEOC hereby releases Morgan Stanley with respect to any and all such claims. This Consent Decree also constitutes a resolution of all claims that were or could

have been raised by Schieffelin against Morgan Stanley, as described in Section 6 below. EEOC and Morgan Stanley further agree that this Consent Decree does not resolve any Charges that may be pending with EEOC other than those specifically referred to in this paragraph or those that may be released by claimants in the Claims Process set forth in Section 7 below. Nothing in this Consent Decree should be construed to preclude EEOC's right to process, in accordance with its procedures, such pending and any future charges filed against Morgan Stanley under Title VII.

4. This Consent Decree shall remain in effect for three years from the date of its entry.

5. Unless otherwise indicated, this Consent Decree governs only IED.

6. As used herein, "Covered Employees" are defined as: (a) women employed in the United States in IED at the levels of (i) Exempt Non-officer eligible to be promoted to Vice–President (including but not limited to Associate and Professional), (ii) Vice President, (iii) Principal or Executive Director or (iv) Managing Director and (b) female American citizens employed in IED at those levels in offices outside of the United States (hereinafter "Covered Employees"). The term "covered position" means those positions identified in (i) through (iv) of this paragraph.

*Section 3: No Admission or Determination of the Merits*

7. This Consent Decree does not constitute and shall not be deemed to be an admission by any party about the merits, validity or accuracy of any of the allegations, claims or defenses of any other party. By entering into this Consent Decree, Morgan Stanley does not admit, but in fact denies, that it has violated Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.) and any other fair employment practice law.

*Section 4: Injunctions*

8. Morgan Stanley and its agents are enjoined during the term of this Consent Decree from violating Title VII by discriminating against Covered Employees in promotion and compensation on the basis of their sex.

9. Morgan Stanley and its agents are enjoined from violating Title VII by retaliating against women employees for asserting any rights under Title VII or participating in this case as claimants, witnesses or in any other way.

*Section 5: Monetary Relief*

10. Morgan Stanley shall pay a Total Settlement Amount of $54 million. Of that sum, $40 million shall be paid within 30 days of the entry of this Consent Decree into a Claim Fund to be used to pay awards to claimants pursuant to the Claims Process described in Section 7 below. That $40 million sum shall be deposited into a bank account bearing an interest rate in effect at such bank for commercial, interest-bearing short-term accounts. Any interest earned on the account shall become part of the Claim Fund. Of the Total Settlement Amount, $2 million shall be spent on costs incurred in implementing Sections 10 through 16 of this Consent Decree.

11. The Fund Administrator, a Morgan Stanley employee, shall be responsible for distributions from the Claim Fund, which shall be made in accordance with the terms of this Consent Decree, and only upon agreement of EEOC and Morgan Stanley or by order of the Court. Upon five days notice, EEOC may inspect the records of the Claim Fund.

*Section 6: Relief for Allison Schieffelin*

12. EEOC, in its sole discretion and without Morgan Stanley's involvement, has allocated $12 million of the Total Settlement Amount to Schieffelin to resolve all her claims regarding termination of her employment.

13. Schieffelin retains the right to submit a claim to the Special Master in the Claims Process described in Section 7 for (a) discrimination on the basis of sex in promotion, compensation, or terms, conditions, or privileges of employment, and (b) retaliation occurring between January 1, 1995 and October 24, 2000, excluding any claims related to the termination of her employment.

14. Schieffelin and Morgan Stanley have entered into a Stipulation of Settlement, which will be "so ordered" by the Court, and

Schieffelin may seek enforcement of this Section of the Consent Decree.

*Section 7: Claims Process*

15. EEOC and Morgan Stanley have selected Judge Abner J. Mikva as a Special Master to determine the appropriate awards, if any, to be paid to claimants from the Claim Fund and thereby to avoid further adversarial court proceedings. The Claims Process is described in Appendix A. Potential Claimants are women employed in offices in the United States or female American citizens employed in offices outside the United States in covered positions in IED at any time from January 1, 1995, to the date of the entry of this Consent Decree. Absolute quasi-judicial immunity shall attach to actions taken by the Special Master in the scope of his or her duties pursuant to this Consent Decree.

16. Morgan Stanley shall pay the hourly fee and expenses of the Special Master from monies other than the Total Settlement Amount.

17. In the event the total amount of money awarded under the Claims Process is less than the total amount of the Claim Fund, the remaining money shall be used during the period of the Consent Decree to fund scholarship programs at institutions or organizations for female students pursuing careers in the financial services industry. In the event the parties are unable to agree as to the specific institutions or organizations, the matter will be submitted to the Special Master for consideration.

18. In the event a claimant refuses to accept an award and execute the required release, the amount of the award will be placed in escrow and used only to settle or satisfy any subsequent claim brought by her (but not for Morgan Stanley's legal fees). If no claim is brought within one year of her rejection of the award or any applicable statute of limitations, whichever is later, the amount in escrow shall be used to fund scholarship programs as described in paragraph 17, above.

19. Morgan Stanley shall provide any claimant for whom the Court approves an award an additional $1,000 that may be used for attorney's fees to seek legal advice regarding the effect of signing the required release. This sum shall be paid from monies other than the Total Settlement Amount. Except for this $1,000 payment and the employer's portion of any taxes as mandated by law, Morgan Stanley is not responsible for any other fees or expenses incurred by claimants or EEOC in connection with the Claims Process.

20. The names of women participating in the Claims Process and the awards of the Special Master shall be kept confidential, and any documents filed with the Court concerning the Claims Process will be filed under seal.

*Section 8: Ombudsperson*

21. Upon the entry of this Consent Decree, Morgan Stanley shall appoint an employee of Morgan Stanley approved by EEOC as Ombudsperson. The Ombudsperson shall be responsible for (i) overseeing the implementation of Sections 10 through 16 of this Consent Decree, (ii) administering the Complaint Policy established in Section 12 of this Consent Decree, and (iii) ensuring Morgan Stanley's compliance with recordkeeping and reporting obligations as described in Section 18 of this Consent Decree. If the Ombudsperson needs to be replaced, Morgan Stanley shall within 30 days provide EEOC the reason therefore and appoint a replacement Ombudsperson, subject to EEOC's approval. If EEOC determines that the Ombudsperson is not performing her duties responsibly or that Morgan Stanley has replaced her for an improper reason or improperly restricted her ability to perform her duties, it may seek relief from the Court. If the Ombudsperson is replaced, nothing shall prohibit EEOC from communicating with the Ombudsperson regarding the reasons for her replacement.

22. The Ombudsperson shall enjoy the full support of Morgan Stanley's senior management and shall be provided the resources necessary to perform her responsibilities. If at any time the Ombudsperson determines that she does not have such support or resources to adequately perform her responsibilities and that she cannot resolve the issue with management, she shall promptly notify EEOC.

*Section 9: Outside Monitor*

23. EEOC and Morgan Stanley have agreed that Paul Shechtman shall serve as Outside Monitor during the period of this Consent Decree.

24. Morgan Stanley shall pay the hourly fee and expenses of the Monitor from monies other than the Total Settlement Amount.

25. The Monitor shall be provided (i) access to Morgan Stanley's training programs described in Sections 10 and 11; (ii) copies of the annual Promotion and Compensation Analysis described in Section 14; (iii) copies of the Exit Interviews described in Section 15; (iv) copies of complaints initiated under Morgan Stanley's IED Complaint Process: Sex Discrimination, which has been established as part of this Consent Decree; (v) copies of Final Reports, as well as interview reports and documents collected by the Ombudsperson in connection with her investigations of complaints; and (vi) copies of the complaint database reports described in Section 13. In addition, the Monitor may request (and, if so, should be given) access to any depositions and expert reports prepared in connection with this matter.

26. The Monitor may request access to Morgan Stanley documents related to the performance of his duties.

27. The Ombudsperson shall meet with the Monitor at the Monitor's request.

28. Any IED employee may contact the Monitor, and the Monitor may contact any IED employee, to address issues that relate to discrimination against Covered Employees on the basis of sex. An employee may not be penalized for speaking with the Monitor. If the Monitor becomes aware of issues that should be brought to the attention of Morgan Stanley and/or EEOC so that they may be promptly addressed, the Monitor shall do so, maintaining the confidentiality of the employee whenever possible.

29. The Monitor shall review and make recommendations, if any, to Morgan Stanley concerning Morgan Stanley's anti-discrimination policies and practices with regard to Covered Employees. At least once each year, the Monitor shall issue a report to Morgan Stanley and EEOC assessing Morgan Stanley's implementation of and compliance with this Consent Decree. In his reports, the Monitor should give special attention to whether Morgan Stanley has implemented meaningful programs to address the retention and promotion of women in IED as called for in Section 16 of this Consent Decree.

30. The Monitor shall not be deemed an agent of Morgan Stanley or EEOC for any purpose.

*Section 10: Management Training*

31. Within 60 days of the entry of this Consent Decree, Morgan Stanley shall hold mandatory meetings for offices with Covered Employees for all IED Managing Directors, officers with responsibility for supervising Covered Employees or determining their compensation or promotion, and Human Resource representatives for IED, including the head of IED, at which (i) the provisions of this Consent Decree shall be fully explained as well as the policies described in Section 12 below; (ii) the Ombudsperson shall be introduced and a detailed explanation provided of her new role in IED; (iii) training shall be given on issues of performance appraisals; compensation and promotion; account assignment; pregnancy, maternity leave and maternal status; and the complaint process with respect to gender issues; and (iv) Morgan Stanley's diversity plan with respect to increasing the hiring, promotion and retention of women in IED (and the best ways to implement the plan) will be discussed. The training in New York City and London shall consist of live presentations. Employees outside New York City and London may participate by (1) video conference or, if that is not practicable, (2) audio conference with web-based video or, if those are not practicable, (3) videotape. The meetings will be led by Morgan Stanley's outside counsel.

32. Within six months of the entry of this Consent Decree, Morgan Stanley shall conduct diversity training for offices with Covered Employees for all IED Managing Directors, officers with responsibility for supervising Covered Employees or determining their compensation or promotion, and Human Resource representatives for IED,

including the head of IED. The training shall focus on issues of cultural diversity with emphasis on gender issues. It shall be conducted by an outside person or organization and shall be approved by EEOC. Employees outside New York City and London may participate by (1) video conference or, if that is not practicable, (2) audio conference with web-based video or, if those are not practicable, (3) videotape.

33. For the meetings and cultural diversity training mandated in paragraphs 31 and 32 above, Morgan Stanley shall maintain records demonstrating attendance (a dated sign-in sheet or its equivalent showing how the training was received (*i.e.*, live, videoconference, etc.) and (ii) a videotape of one meeting and one cultural diversity training session in New York). Copies of the attendance lists shall be provided to the Monitor. Copies of the videotapes shall be provided to EEOC and the Monitor. The Monitor shall attend a meeting and cultural diversity training session in London and report on it as part of his reporting duties.

*Section 11: Anti–Discrimination Training*

34. In each 12 month period after entry of this Consent Decree for offices with Covered Employees, Morgan Stanley shall conduct anti-discrimination training for all IED employees, including Managing Directors and Human Resources Representatives for IED. The three mandatory training sessions shall emphasize issues relating to sexual harassment, sex-based hostile environment, appropriate work place conduct and retaliation. In at least one of the first two years, the training in New York and London shall consist of live presentations. In other offices that training session shall be conducted by (1) video conference or, if that is not practicable, (2) audio conference with web-based video or, if those are not practicable, (3) videotape. In other years, the training may be computer-based. The live presentation shall be conducted by an outside person or organization and shall be approved by EEOC, and any computer-based training shall be approved by EEOC. Training shall commence within ninety days of the entry of this Consent Decree.

35. Any employee newly entering an IED office with Covered Employees shall receive anti-discrimination training with emphasis on the topics above within two months of his or her entry. The training shall be approved by EEOC.

36. Morgan Stanley shall maintain records (including a dated sign-in sheet or its equivalent showing how the training was received (*i.e.*, live, video conference, computer, etc.)) demonstrating (i) that all IED employees have successfully completed the three training sessions mandated in paragraph 34 of this Section and (ii) that new IED employees have received the training mandated in paragraph 35. Those records shall be provided to the Monitor in a timely fashion so that he or she can report on compliance. In addition, Morgan Stanley shall maintain a videotape of one of the live presentations in New York, a copy of which shall be provided to EEOC and the Monitor. The Monitor shall attend a training presentation in London and report on it as part of his reporting duties.

*Section 12: Policies*

37. EEOC has reviewed and approved the following Morgan Stanley policies and procedures: (i) Code of Conduct section on Notification of Litigation, Investigations, Inquiries and Complaints, (ii) Anti–Harassment Policy, (iii) IED Complaint Process: Sex Discrimination, (iv) Business Entertainment and Expense Reimbursement policies, (v) IED Policy on Assignments, (vi) Promotion Policy and (vii) Paid Parental Leave Policy. These policies shall become effective and shall be posted on the IED website no later than 30 days after the entry of this Consent Decree and shall take precedence over any other related policies. A copy of the policies are incorporated by reference herein and attached hereto in relevant parts as Appendix B.

38. All releases sought by Morgan Stanley in conjunction with a Covered Employee's separation of employment or settlement of employment discrimination claims shall include the following language in a section entitled "Exceptions": This agreement does not (i) prohibit or restrict you from communicating, providing relevant information to or

otherwise cooperating with EEOC or any other governmental authority with responsibility for the administration of fair employment practices laws regarding a possible violation of such laws or responding to any inquiry from such authority, including an inquiry about the existence of this Agreement or its underlying facts, or (ii) require you to notify Morgan Stanley of such communication or inquiry, or (iii) preclude you from benefiting from classwide injunctive relief awarded in any fair employment practices case brought by any governmental agency, provided such relief does not result in your receipt of any monetary benefit or substantial equivalent thereof.

39. If Morgan Stanley seeks to revise any of these policies and the revision in any way implicates anti-discrimination concerns, it shall submit the proposed revisions to EEOC for its comments. Comments shall be made within 30 days after the receipt of the proposed revisions. Every four months from the date of the entry of this Consent Decree, Morgan Stanley shall submit to EEOC the current versions of all of the policies set forth in paragraph 35 in a manner that highlights any changes thereto. If EEOC determines that Morgan Stanley has modified a policy without its consent in a way that implicates anti-discrimination concerns, it may ask Morgan Stanley to revise the policy, and if the issue is not resolved within 20 days seek relief from the Court.

*Section 13: Complaint Database*

40. Within 60 days of the entry of this Consent Decree, Morgan Stanley shall develop a computer database to record complaints of sex discrimination, including retaliation claims, by women in IED in offices in the United States and Covered Employees working in foreign jurisdictions. The computer database will categorize information relating to such complaints by complainant, alleged offending party, business unit, geographic location, nature of complaint, final determination, and action taken, if any. Information regarding a complaint shall be added to the database no later than five days after the complaint is received, and information regarding the final determination and action

taken, if any, shall be added within five days thereof.

41. Every six months, the Ombudsperson shall produce a report from the database on complaints received, with particular focus on patterns of complaints, if any. The report shall be provided to the head of IED and the management of any business unit in which a pattern of complaints has been identified, and the Ombudsperson shall meet with them to discuss the report and any concerns of Covered Employees relating to the work environment in IED.

*Section 14: Promotion and Compensation Analysis*

42. Each year during the term of this Consent Decree, Morgan Stanley shall conduct a comparative analysis of the promotion and compensation of Covered Employees and males in the same positions. The analysis shall be provided to the head of IED and the management of each business unit to apprize them of the differences, if any, in compensation and promotion rates on the basis of sex, and the Ombudsperson shall meet with them to discuss the analysis and any concerns of women regarding the fairness of the promotion and compensation process.

*Section 15: Exit Interviews*

43. Morgan Stanley shall conduct exit interviews of women in offices in the United States and of Covered Employees in foreign offices who voluntarily leave IED, to determine whether the employee has experienced discrimination on the basis of sex. The responses shall be recorded and retained for the duration of this Consent Decree. If during the exit interview any employee raises any concern regarding unfair treatment on the basis of sex, her statements shall be recorded in the Complaint Database described in Section 13.

*Section 16: Programs To Address the Retention and Promotion of Women in IED*

44. Morgan Stanley shall expand programs to identify high potential female employees in IED and to assist them in acquiring the experience and skills for career advancement. As part of the program, the Ombudsperson shall meet at least once a year with HR and the relevant senior IED

Managers to review the performance of such women with the goal of increasing their retention and prospects for promotion.

45. Morgan Stanley shall provide mentoring for any Covered Employee who wishes to participate in its mentoring program. The program shall pair a Covered Employee with a senior professional or manager in IED to provide sustained career guidance and support, and thereby to enhance the Covered Employee's prospect for success at Morgan Stanley.

46. The Ombudsperson shall issue an annual report to the Monitor regarding these initiatives.

*Section 17: Posting*

47. Within 10 days of the entry of this Consent Decree, Morgan Stanley shall post in conspicuous places where employee notices are posted, in offices with Covered Employees and post on IED's internal website, the Notice of Non–Discrimination annexed hereto as Appendix C.

48. Within 10 days of the entry of this Consent Decree, Morgan Stanley shall notify each employee in IED by email that the Consent Decree may be accessed on IED's internal website.

*Section 18: Recordkeeping*

49. Morgan Stanley shall comply with the applicable recordkeeping regulations set forth in 29 C.F.R. § 1602 *et seq.* Where a charge of discrimination has been filed, or an action brought against Morgan Stanley under Title VII, involving IED, Morgan Stanley shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. Personnel records relevant to a charge or action include personnel or employment records relating to the complaining party and to all other employees holding positions or titles, within the same employment unit as the complaining party, similar to that held or sought by the complaining party. The date of final disposition of the charge or the action means the date of expiration of the statutory period within which the complaining party may bring an action in a court or, where an action is brought against an employer, the date on which such litigation is terminated.

50. At the end of one year from the entry of this Consent Decree and each year thereafter, Morgan Stanley shall submit to EEOC the following information:

a. For each Managing Director position filled within IED by transfer from another division or outside hire, the employee profile (or resume, if external) of the new employee and the employee profiles of any other person considered for the position;

b. For each Vice–President and Executive Director position filled within IED by transfer from another division or outside hire, the employee profile of the new employee;

c. Non-privileged studies of Morgan Stanley's employment practices that identify the sex, employment status, selection status or other outcome for any promotion for Associates, Vice–Presidents, Executive Directors, and Managing Directors in IED, if any; and

d. Sex, job title, total annual compensation, and each component thereof for all employees at the levels of (1) Exempt Non–Officer eligible to be promoted to Vice–President (including but not limited to Associate and Professional); (2) Vice–President; (3) Executive Director; and (4) Managing Director in IED. To the extent feasible, the information should be provided in an electronic format acceptable to EEOC with file layout and coding instructions.

50. EEOC may monitor compliance with this Consent Decree by making reasonable requests for records that directly relate to allegations of discrimination occurring after the effective date of the decree. In making such requests, EEOC shall describe the nature of the alleged discrimination. If Morgan Stanley declines to produce on grounds of unreasonableness or unrelatedness, EEOC may seek relief from the Court.

*Section 19: Miscellaneous*

51. The parties shall continue to be bound by the confidentiality order agreed to in this litigation except that documents protected thereby may be provided to the Special Master (or otherwise used in the claims process) or to the Monitor. Information provided to EEOC, Morgan Stanley, the Moni-

tor, or the Special Master pursuant to this Consent Decree and designated confidential by the provider shall not be disclosed to anyone other than: (i) EEOC and any experts retained by it to assist it in evaluating the information in connection with this case; (ii) Morgan Stanley and any experts retained by it in evaluating the information in connection with this case; (iii) the Special Master; (iv) the Monitor; (v) the Court under seal; and (vi) claimants as reasonably necessary in the Claims Process. Such information and copies thereof and reports based thereon will be destroyed or returned to the provider within thirty (30) days of the expiration of this Consent Decree. The Monitor's reports shall be disclosed only to EEOC and Morgan Stanley. Any person to whom information is disclosed pursuant to this paragraph shall agree to keep the information confidential and not disclose it to anyone.

52. Morgan Stanley's obligation to collect, maintain and distribute information pursuant to this Consent Decree may be limited by applicable foreign law. If a conflict with foreign law exists, Morgan Stanley shall promptly bring the matter to the attention of EEOC, citing the specific foreign law provision at issue. If the matter cannot be resolved, EEOC or Morgan Stanley may seek relief from the Court.

53. This Consent Decree constitutes the entire agreement among EEOC and Morgan Stanley with respect to the subject matter hereof and may not be modified except in writing, signed by EEOC and Morgan Stanley and approved by and filed with the Court, except that EEOC and Morgan Stanley may agree to amend Sections 10–16 and 18 without approval of the Court.

54. Should Morgan Stanley or EEOC believe that the other party has breached any provision of this Consent Decree, the party shall give notice to the other party detailing the claimed breach. The alleged breaching party shall then be given 15 days from receipt of the notice to cure or respond to the alleged breach. If the issue is not resolved, the complaining party shall have the right to apply to the Court for relief. If a party believes it will be prejudiced by having to provide the notice or wait 15 days thereafter, it may apply directly to the Court for relief.

55. Except as otherwise provided pursuant to this Consent Decree, and in the Stipulation of Settlement between Morgan Stanley and Schieffelin, each party shall bear its own attorneys' fees and costs incurred in this action.

56. All communications and documents sent to EEOC by Morgan Stanley pursuant to the terms of this Consent Decree are to be sent by fax, overnight express mail or hand delivery to EEOC Regional Attorney, New York District Office. All communications and documents sent to Morgan Stanley by EEOC pursuant to the terms of this Consent Decree, other than those designated for the Fund Administrator, are to be sent by fax, overnight express mail or hand delivery to Mark Greenfield, Esquire, 1221 Avenue of the Americas, 5th floor, New York, New York 10020.